In the Matter of the Adoption of JANE DOE, Minor, by JAMES T. McCRAW and LOUISE M. McCRAW, His Wife.

(Filed 2 November, 1949.)

**1. Bastards § 15—**

Where the mother and the reputed father of a child born out of wedlock thereafter marry, the child acquires the status of legitimacy which accompanies it wherever it goes and is determinative of the rights and duties of the parents as to its custody and support. G.S. 49-12 as amended by chap. 663, sec. 2, Laws of 1947.

**2. Appeal and Error § 51c—**

A decision of the Supreme Court must be interpreted with reference to the framework of the particular case.

**3. Adoption §§ 4, 7, 8—Upon marriage of mother and reputed father, proceedings for adoption upon consent of mother should be revoked.**

Where proceeding for the adoption of a child born out of wedlock is instituted in conformity with the statute upon the written consent of its mother, G.S. 48-5, but its mother and reputed father marry prior to an order of reference directing the Superintendent of Public Welfare of the county to make a full investigation to determine if the child is a proper child for adoption, etc., and the natural parents intervened and moved to vacate and dismiss the proceeding, *held* at the time of the reference and at the time the court came to determine whether "the child is the proper subject for adoption," G.S. 48-3, G.S. 48-4, G.S. 48-5, the status of the child had changed from illegitimate to legitimate, and the motion of interveners to vacate the proceeding and for the custody of their child should have been allowed, it being required in a proceeding for the adoption of a

legitimate child that its natural parents be parties or their consent to the adoption be made to appear unless they had abandoned the child. G.S. 14-322, G.S. 14-326. The institution of bastardy proceedings against the father prior to the birth of the child is in itself insufficient to establish such abandonment.

APPEAL by interveners, Hubert C. Wilder and his wife, Elizabeth May Wilder, minors, by their next friend, W. C. Wilder, from *Bone, J.,* at Chambers in Nashville, North Carolina, 5 August, 1949. From WILSON.

Proceeding for the adoption of a minor child born out of wedlock, at Rocky Mount, in Nash County, N. C., instituted 1 January, 1949, before Clerk of Superior Court of Wilson County, N. C., in which proceeding the natural parents, after marriage 4 January, 1949, intervened on 4 June, 1949, and moved to vacate and dismiss the proceeding.

The record discloses that the procedure in this adoption proceeding up to and including the interlocutory order, dated 28 February, 1949, seems to follow the provisions of the General Statutes of North Carolina, Chapter 48, as amended by Chapter 281 of P.L. 1941, pertaining to the adoption of a minor child, applicable to a case where the child is born out of wedlock, and the mother of the child releases all rights to the child, and surrenders it to the Superintendent of Public Welfare of the county for placement and adoption, and consents to the adoption by any person selected by him. See G.S. 48-4 and G.S. 48-5 as amended by P.L. 1941, Chapter 281.

The record shows that an order of reference was made on 7 January, 1949, by Clerk of Superior Court of Wilson County, directing James A. Glover, Superintendent of Public Welfare of Nash County to "make a full, careful and complete investigation of the conditions and antecedents of the said minor for the purpose of ascertaining whether she is a proper subject for adoption," etc.

The record further shows that an interlocutory order was entered in the proceeding by the Clerk of Superior Court of Wilson County, N. C., on 28 February, 1949, in which after reciting the representations set forth in the petition and, further, that "whereas upon examination and consideration of the reports of the investigating officials assigned to this case, and other evidence now available to the court, it is found by the court that the home of the petitioners is a proper and suitable home in which to place the said Jane Doe and that the said minor is a fit subject for adoption, and that the adoption of said minor by said petitioners is for the best interest of the said child," the court tentatively approved the adoption of said child by the petitioners, and ordered that she "be, and is hereby placed in the care and custody of petitioners until further orders of this court." The court further "expressly ordered that this order shall be provisional only and may be rescinded or modified at any time prior to

final order of adoption which shall be made not less than one year or more than two years after this date," and "that until said final order of adoption the said minor shall be and remain a ward of this court, and its care shall be under the supervision of Monroe Fulghum, Superintendent of Public Welfare of Wilson County, unless otherwise directed by the court."

The motion of the interveners, filed 4 June, 1949, in substance and in material part, is predicated upon these allegations: That they, the natural parents of the child, the subject of the proceeding, made definite plans on 31 December, 1948, to intermarry; that about 8:30 o'clock a.m., on 3 January, 1949, they gave oral notice thereof to James A. Glover, County Superintendent of Public Welfare of Nash County; that they were intermarried at 5 o'clock a.m., on 4 January, 1949, at Dillon, in the State of South Carolina; that thereby their child was legitimated, upon which "all basis for adoption expired"; that thereupon they proceeded directly to the office of the said James A. Glover at Nashville, North Carolina, arriving at approximately 10 o'clock a.m., on same day, and gave to him notice of their intermarriage,—exhibiting to him a certificate of their marriage, and demanded to have the care and custody of their child, to which he, the said Glover, answered, "It's too late," and declined to give them information as to the whereabouts of the child, or as to pendency of the adoption proceeding in Wilson County, and continued to ignore their pleas for, and as to the whereabouts of their child,—as well as to ignore their legal status as legitimate parents of the child, and that despite all of which he continued to participate in the proceeding; that the notice of the marriage given to the Superintendent of Public Welfare of Nash County, and the demand for the child was adequate notice of the legitimation of the child and of the mother's withdrawal of any consent to the custody and adoption of her child which she may have previously given; that by reason of legitimation of the child by the marriage of her parents on 4 January, 1949, the order of reference on 7 January, 1949, and the interlocutory order of 28 February, 1949, as well as intermediate proceedings, whatever such proceedings may have been, their contents being denied to them, were void; and that they, the interveners, are entitled to the care and custody of their child.

While the petitioners, in reply to the averments in the motion of interveners, plead the regularity of the adoption proceeding upon the consent of the mother of the child, they say (1) that they "are advised and so believe that on January 3, 1949, one W. C. Wilder went to see James A. Glover, County Superintendent of Public Welfare of Nash County, at his office in Nashville, North Carolina, and thereupon . . . advised . . . Glover that he, Wilder, was of the opinion that Elizabeth May Jacobs (Wilder) and Hubert C. Wilder might marry in the event that they would thereby be able to secure custody of the child, which is the subject

of this proceeding"; (2) that "it is not denied that Hubert C. Wilder and Elizabeth May Jacobs (Wilder) were married on January 4, 1949"; (3) that "petitioners are informed, advised, and so aver that on January 4, 1949, Elizabeth May Jacobs (Wilder) went into the office of James A. Glover alone and advised him of her marriage"; (4) that "it is not denied that Hubert C. Wilder, the alleged father of said child, has not consented to its adoption"; and (5) that "petitioners admit that Section 12 of Chapter 49 of the General Statutes of North Carolina apply as between Hubert C. Wilder and the child, which is the subject of this adoption proceeding."

And petitioners further say that the intervener, Hubert C. Wilder, denied paternity of the child consistently prior to 4 January, 1949, and failed and refused to "make any provision for its maintenance and support prior" thereto, and that in consequence Elizabeth May Jacobs (Wilder) swore out a warrant against him in the Recorder's Court of Nash County on 13 September, 1948, alleging his paternity of the child, and failure to support it.

The record also contains purported copy of warrant, and of the affidavit upon which the warrant was issued, together with bond for appearance of Hubert C. Wilder in the Recorder's Court at Nashville, N. C., on 4 October, 1948, which the Clerk of Superior Court of Nash County certifies are true copies of such papers "in a certain criminal action lately pending in the Recorder's Court of this County wherein the State of North Carolina was prosecutor and Hubert Cordell Wilder was the defendant, as the same is taken from and compared with the original which is on file in this office."

The record also contains affidavits of twenty-nine persons, men and women, mostly of Nash County, and some of Franklin County, who say they have known Hubert C. Wilder and his wife, Elizabeth May Wilder, for various periods of time, from 7 to 20 years; that they intermarried subsequent to the birth of their child; that otherwise their general reputation and character in the community in which they live is good; that they are suitable persons to have the care and custody of their child; that each believes they will provide a good home for themselves and their child; and that the custody of their child should be awarded to them.

When the cause came on for hearing on 27 June, 1949, upon the said motion of interveners, and after consideration thereof, the Clerk of Superior Court made extensive findings of fact,—the material portions of which in summary are these:

1. That the child, which is the subject of the proceeding, was born to Elizabeth M. Jacobs (Wilder) out of wedlock, on 6 December, 1948, in Park View Hospital, Rocky Mount, N. C.

2. That prior to the birth of this child, Hubert C. Wilder was its putative father, and that (he denied paternity and refused to contribute to its support). (The portion in parenthesis was disapproved by the judge on appeal as hereinafter shown.)

3. That Elizabeth May Jacobs (Wilder) caused a warrant to be issued from the Recorder's Court of Nash County, North Carolina, against Hubert C. Wilder on 13 September, 1948, in which she complained that he had denied paternity of the child and had failed and refused to maintain and support the child; and that the criminal proceeding was pending at the date of the birth of the child, as well as at the time the child was placed in the custody of the petitioners, and at the time of the institution of this adoption proceeding.

4. That on 8 December, 1948, Elizabeth May Jacobs (Wilder) executed a written consent and surrender, in due form, releasing all her rights in, and claim to her said child to the Superintendent of Public Welfare of Nash County, North Carolina, and granting to him authority to place her child in a foster home selected by him with the privilege of legal adoption, without further notice to her.

5. That on 20 December, 1948, Elizabeth May Jacobs (Wilder) executed in conformity with law and voluntarily a request for the separation from her of her infant child under six months of age, and James A. Glover, Superintendent of Public Welfare of Nash County, North Carolina, executed his acceptance thereof on 23 December, 1948, and on same day executed his approval of the separation, all in due form and in compliance with the law for such cases.

6. That the child, the subject of this proceeding, was placed in the home of the petitioners on 23 December, 1948.

7. That the petition for adoption of the child by James T. McCraw and wife, Louise M. McCraw, was filed 1 January, 1949.

8. That James A. Glover, Superintendent of Public Welfare of Nash County, North Carolina, executed his consent to the adoption of this child by petitioners on 3 January, 1949.

9. That Elizabeth May Jacobs, the mother of the child, the subject of this proceeding, and Hubert C. Wilder, its putative father, were married at 5 o'clock a.m., on 4 January, 1949.

10. That an order of reference was entered in the cause on 7 January, 1949, directing James A. Glover, Superintendent of Public Welfare of Nash County, North Carolina, to make a full, careful and complete investigation of the conditions and antecedents of said child to determine if she was a proper child for adoption, etc.

11. And upon an examination and consideration of the reports of the investigating officials so assigned, and other evidence, the Clerk of Supe-

rior Court of Wilson County entered an interlocutory order on 28 February, 1949.

12. That on 4 June, 1949, W. C. Wilder, as next friend (duly appointed) of Hubert C. Wilder and Elizabeth May Jacobs Wilder, filed a motion on their behalf to dismiss the adoption proceeding.

13. That the petitioners are fit persons to become adoptive parents of the child, and have assumed obligations on behalf of said child and have made far-reaching plans and provisions for its future, and it is to the best interest of the child that she remain in the home of the petitioners.

Upon the findings of fact, the Clerk on 2 July, 1949, "ordered, adjudged and decreed:

"1. That this proceeding is properly constituted in the form required by law.

"2. That the motion herein filed by Hubert C. Wilder and Elizabeth May Jacobs Wilder, by their next friend, W. C. Wilder, to vacate the petition, the order of reference, the consent of the County Superintendent of Public Welfare of Nash County, and the interlocutory order entered in this cause be, and the same is hereby denied.

"3. That the motion for a final order to be entered herein delivering the custody of the minor child to Hubert C. Wilder and Elizabeth May Jacobs Wilder be, and the same is hereby denied.

"Let the cause be retained to the end that such other and further orders may be entered hereafter as may by the court be considered just and proper."

From this order W. C. Wilder, as next friend of Hubert C. Wilder and Elizabeth May Wilder, appealed to the judge of the Superior Court. On such appeal interveners applied for an order permitting them and their attorneys to inspect the confidential reports of the welfare officer in respect to the adoption of the child. The application was denied, and they except.

And on such appeal the judge, resident of the Second Judicial District, entered judgment in which it is stated that "the court is of the opinion that while some of the clerk's findings of fact are not necessary upon an adjudication of the motion, nevertheless, all of them are supported by the evidence, except that portion of finding which states that 'he denied paternity and refused to contribute to its support.' With the exception of this finding the court approves the clerk's findings of facts as set out in his order which is here appealed from. Upon the facts found the court is of the opinion that the said order of the clerk denying appellants' motion is correct in law,"—and thereupon affirmed the order.

The interveners appeal therefrom to Supreme Court and assign error.

*F. L. Carr and Lucas & Rand for petitioners, appellees.*
*M. Butler Prescott and G. L. Parker for interveners, appellants.*

WINBORNE, J.　The question of law raised by the appellants upon the facts of this case relate to, and is determined by the legal effect the intermarriage of the mother of the child, born out of wedlock, and the reputed father, has upon the status of the child as a proper subject for adoption in an adoption proceeding, then pending,—based upon consent of the mother in a manner provided by the statute.　G.S. 48-5.　This exact question does not appear to have been considered and passed upon by this Court.　Yet we find guidance in pertinent statutes of this State, and related decisions of this Court.

The statute, pertaining to legitimation of children born out of wedlock, provides that "when the mother of any child born out of wedlock and the reputed father of such child intermarry or shall have intermarried at any time after the birth of the child, the child shall in all respects after such intermarriage be deemed and held to be legitimate and entitled to all the rights in and to the estate, real and personal, of its father and mother that it would have had had it been born in lawful wedlock."　P.L. 1917, Chapter 219, Sec. 1, later C.S. 279 and now G.S. 49-12 as amended by Laws 1947, Chapter 663, Sec. 2.

By this statute, upon the happening of the event of intermarriage of the mother of a child, born out of wedlock, and the reputed father of such child, the status of the child is transmuted from that of illegitimacy to that of legitimacy in all respects, except as to rights of inheritance.　This Court has held that "legitimacy is a status," and accompanies the child wherever it goes.　*Fowler v. Fowler,* 131 N.C. 169, 42 S.E. 563.　Status is "the legal position of the individual in or with regard to the rest of the community."　Black's Law Dictionary, 3rd Ed.

Indeed, in the case of *Fowler v. Fowler, supra,* decided in the year 1902, long before the enactment of the statute in 1917, now under consideration, this Court adverted to the effect of an Illinois statute of similar import.　There the father, then a resident of North Carolina, instituted an action here to legitimate his child born out of wedlock in the State of Illinois.　This Court, in dismissing the action *ex mero motu,* had this to say in an opinion by *Clark, J.:* "This proceeding is provided to legitimate illegitimates, but it appears from the averments in the complaint that the child is already legitimated.　By the laws of this State the subsequent marriage of the parent does not legitimate their children born prior to the marriage.　But legitimacy is a *status,* and by the laws of Illinois the subsequent marriage of the parents legitimates their prior offspring.　'If the mother of any bastard child and the reputed father shall, at any time after its birth intermarry, the said child shall in all

respects be deemed and held legitimate.' Rev. Stat. (1895), page 203, Sec. 15. The parties were domiciled, according to the complaint, at the time of the child's birth and up to the time of the marriage in Illinois, and it is well settled that the child, being still a minor, its legitimacy then accrued and accompanies it wherever it goes."

And in Vernier's American Family Laws, Vol. IV, Sec. 246, the author states that, in general, "Statutes providing for the legitimation of the child by the intermarriage of its parents ordinarily have the effect of rendering the child legitimate for all purposes." And the author adds this note: "If the child becomes fully legitimate, it follows that he should be treated as a child born in lawful wedlock in determining rights and duties of parent and child, such as custody, support and inheritance."

This would seem to be the reasonable and logical meaning of G.S. 49-12. In declaring in this statute that "the child shall in all respects after such intermarriage be deemed and held to be legitimate," the General Assembly clearly intended that the child should be treated as a child born in lawful wedlock in determining the rights and duties of parent and child as to custody and support.

However, as to the right of inheritance provided for, in G.S. 49-12, this Court has construed the statute in these cases: *Bowman v. Howard,* 182 N.C. 662, 110 S.E. 98; *Stewart v. Stewart,* 195 N.C. 476, 142 S.E. 577; *In re Estate of Wallace,* 197 N.C. 334, 148 S.E. 456; *Reed v. Blair,* 202 N.C. 745, 164 S.E. 118. There the Court was only considering the result of the change in the status of the child, brought about by the marriage of the mother to the reputed father, as to "rights in and to the estate, real and personal, of its father and mother." And "the law discussed in any opinion is set within the framework of that particular case," said *Barnhill, J.,* in *Light Co. v. Moss,* 220 N.C. 200, 17 S.E. 2d 10. See also *S. v. Crandall,* 225 N.C. 148, 33 S.E. 2d 861, and cases there cited. In this light, nothing said by the Court in those cases, *Bowman v. Howard, supra,* and the others *supra,* is in conflict with what is said otherwise hereinabove as to the effect such intermarriage has upon the status of the child.

Therefore, while at the time of the institution of the present adoption proceeding on 1 January, 1949, the status of the child sought to be adopted was that of illegitimacy, the status of the child, after the intermarriage of her mother and her reputed father, at 5 o'clock a.m., on 4 January, 1949, was that of legitimacy. The transmutation in her status came about by operation of law. Thus when the order was made referring the case to the County Superintendent of Public Welfare of Nash County, "to investigate the conditions and antecedents of the child for the purpose of ascertaining whether she is a proper subject for adoption," and when the Superintendent made written report of his findings for

examination by the court of adoption, all as required by G.S. 48-3, and when the court of adoption came to determine whether "the child is a proper subject for adoption," as required in G.S. 48-5, the subject under investigation and consideration was a legitimate child—of natural parents, who as such had not consented to the adoption. And the court of adoption should have so treated and considered the child in determining whether she was a proper subject for adoption as required before tentative order of adoption be entered. G.S. 48-5. True it is, that prior to the intermarriage of the parents the mother had set in motion her consent to an adoption in a method provided by the statute. But she did so at a time when the child occupied the status of illegitimacy. At that time her consent to the adoption of her child, born out of wedlock, is all that the law seems to require. *Ashby v. Page,* 106 N.C. 328, 11 S.E. 283; *In re Shelton,* 203 N.C. 75, 164 S.E. 332; *In re Foster,* 209 N.C. 489, 183 S.E. 744; *In re McGraw,* 228 N.C. 46, 44 S.E. 2d 349. However, when the status of the child became legitimate, upon intermarriage of her parents, the consent of the mother previously given was no longer sufficient to render the child a proper subject for adoption. Rather it is more reasonable that such consent previously given was revoked by operation of law. But be that as it may, under the statutes, now G.S. 48-4 and G.S. 48-5, read together, the parents of the child must be parties to this adoption proceeding, or their consent to the adoption must be made to appear, unless, perchance, they had willfully abandoned the child within the meaning of the criminal statute pertaining to abandonment. G.S. 14-322 and G.S. 14-326. See *Truelove v. Parker,* 191 N.C. 430, 132 S.E. 295; *Ward v. Howard,* 217 N.C. 201, 7 S.E. 2d 625. And on this record there is no finding that either of the parents of the child had willfully abandoned her. A finding that a warrant was issued against the reputed father, as shown, three months before the birth of the child is insufficient.

Hence, in the light of the rulings, applied to the facts of this case, as hereinabove set forth, we hold that the child sought to be adopted was not a proper subject for adoption at the time the court of adoption entered the tentative order of adoption on 28 February, 1949. Therefore, the court was without authority to make the order. Thus there is error in the denial of interveners' motion to vacate the proceeding and for the custody of their child.

The cause will be remanded for further proceedings in accordance with this opinion.

Reversed.