[Crim. No. 2236. Third Dist. Oct. 2, 1950.]

In re JACOBA MARIE BARENTS, on Behalf of BABY BOY BARENTS, a Minor, on Habeas Corpus.

Gordon McKenzie and Ruth E. Bates for Petitioner.

C. W. Anderson for Respondents.

VAN DYKE, J.—On May 11, 1949, there was born to petitioner, Jacoba Marie Barents, a male child. The child was

illegitimate. On May 15th following petitioner signed a written instrument, stating that she was giving the infant into the possession of respondents, Jacob Jens Jorgensen and Mildred Jorgensen, for purposes of adoption and that she would sign any further documents necessary to effectuate such adoption. On June 17th respondents herein, having had the infant in their possession since the mother gave it to them, petitioned the Superior Court for Sonoma County for the adoption of the baby. Pursuant to statute the State Department of Social Welfare was notified and on July 28th the mother signed, in the presence of an agent of the department, the form of consent to adoption required by the statute. Therein she stated that she was the mother of the infant, was entitled to its sole custody and did give her full and free consent to its adoption by respondents herein. On October 20th following she gave to the department a document entitled ''withdrawal of consent,'' stating therein that she did thereby withdraw her consent to the adoption of the child by respondents and refused to consent thereto. █ Thereafter she filed in the Sonoma County court a petition for a writ of habeas corpus, wherein she sought to have the child taken from the custody of the proposed adoptive parents and given to her. That court having issued the writ upon motion, discharged the same and it is conceded here that no evidence was taken and that the matter was disposed of purely upon issues of law. The action of the trial court is therefore not res judicata here. (*In re White*, 49 Cal.App.2d 160 [121 P.2d 100].) The mother thereupon petitioned this court for a writ of habeas corpus, which was issued, and respondents having appeared in opposition to the petition, and no issue of fact having been raised, the matter has been submitted for decision.

It is the claim of petitioner that although her consent to adoption had been given she had a right to withdraw that consent at any time before the final decree of adoption should have been made by the superior court and that she has exercised that right; that therefore the superior court is without jurisdiction to proceed further in the adoption proceedings and would be without jurisdiction to make any order of adoption, and that as a consequence she is now entitled to the custody of her child.

The mother of an illegitimate minor is entitled to its custody. (Civ. Code, § 200.) That right of custody has not in

this case been interrupted or terminated by any judicial decree. However, we understand that the parties wish this matter decided upon the narrow issue of jurisdiction first above stated. Prima facie the petitioner here might be entitled to the custody of her infant during the adoption proceedings, but the determination of whether or not an order to that effect should be made would involve findings as to the best interests of the minor and neither by evidence introduced nor by suggestion has that issue been considered. We shall, therefore, confine this decision strictly to the issues which the parties have asked this court to determine.

The necessity of consent to adoption either by the parents of legitimate children or by the mother of an illegitimate child is not and could not be disputed, but the question of whether or not in adoption proceedings, such consent having been given, it can then be withdrawn prior to adoption, and the conditions under which it may be withdrawn, have been the subject of conflicting decisions in the courts of this state and of other states. It is conceded by all, as indeed it must be, that in this state the matter of adoption and of the procedure under which it must be accomplished is completely statutory and has never been a part of the constitutional jurisdiction given to courts. (*In re Stevens,* 83 Cal. 322, 330 [23 P. 379, 17 Am.St.Rep. 252]; *In re Williams,* 102 Cal. 70, 81 [36 P. 407, 41 Am.St.Rep. 163]; *Estate of Sharon,* 179 Cal. 447, 454 [177 P. 283].) Responsive to the need for legislative action our Legislature has from the earliest years of statehood provided a statutory plan whereunder adoptions could be carried out. A fundamental requisite has always been the consent of the parent or parents entitled to the custody of the child and charged with the duties of caring for it. As was said by the Supreme Court in *Matter of Cozza,* 163 Cal. 514, 522 [126 P. 161, Ann.Cas. 1914A 214]:

". . . Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the superior court to make an order of adoption, unless the conditions or exceptions exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter."

The state in its position of *parens patriae* is of course charged with a continuing interest in the welfare of children within its borders and our state has surrounded the matter

of their custody and care, including their adoption, with many protective statutory laws. With regard to adoption, the statutory scheme is complete and detailed and the requisite of consent has been carefully preserved and is general, except where statutorily defined exceptions exist. With these exceptions we are not here concerned.

With respect to consent the Civil Code, by section 224, provides that an illegitimate child cannot be adopted "without the consent of its mother if living." By section 226 the code declares that the first step in an adoption proceeding is the filing of a petition for that purpose in the superior court, and the giving of immediate notice of the pendency of such proceeding to the State Department of Social Welfare. It is then provided that in cases where consent is required such consent must be signed in the presence of an agent of the department and filed with the clerk of the court. The statute then declares that with respect to cases such as this, the consent having been so executed, it shall be the duty of the department to accept it and to ascertain whether the child is a proper subject for adoption, and whether the proposed home is suitable, filing its report on those matters with the court. It is provided that the consent shall be on a form prescribed by the department. The provision making it the duty of the department to accept the consent was added to the existing code requirements in 1945 and was in effect when the consent of petitioner here was given. In 1949 the Legislature added a statutory provision affecting such consents by declaring in section 226a of the Civil Code that once given such consent to adoption might not be withdrawn except with court approval, and providing a method whereby the issue of the right of the consenting parent or parents to withdraw the consent might be presented to and determined by the court in which the adoption proceedings were pending. This last legislation went into effect after the consent of petitioner here had been given, but before her attempted withdrawal of that consent.

Petitioner has not attempted to avail herself of this method of obtaining court approval to her withdrawal of her consent, contending that the provisions therefor do not apply to her; that the consent she gave was withdrawable at her pleasure at any time before an order of adoption should have been signed, and that the legislation referred to could not take away her absolute right which she claims existed and would

exist from the time she gave her consent up to and until such order was made. We may say here that if, under the statutes governing adoption, it could be said that the consenting parent or parents had such right of unilateral action and could so withdraw and revoke consent so given, then the Legislature could not take away that absolute right by legislation adopted during the interval between the giving of such qualified and revocable consent and the termination of the adoption proceedings. On this point we think it enough to say that every presumption and intendment is against such retroactive application of legislation. Statutes are presumed to operate prospectively only (*Jones* v. *Union Oil Co.*, 218 Cal. 775 [25 P. 2d 5]); statutes will be construed as prospective in operation unless the legislative intent to make them retroactive clearly appears (*Krause* v. *Rarity*, 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327]); our Civil Code provides that no part thereof is retroactive unless expressly so declared (Civ. Code, § 3), which declaration does not here exist; and no reason has been suggested, and we can think of none, why retroactive effect ought to be given in this instance.

But in our opinion petitioner here, having given her consent under the statute in force at the time and in the form in which she gave it, was not free to withdraw the same or to revoke it merely because she had changed her mind, whether that change originated in whim and caprice or rationally by reason of changed conditions, which latter ground she avers in her petition. When the Legislature, exercising its well-nigh plenary power over the subject of adoptions, required the consent of a parent or parents to the adoption of a child and when it provided that such consent should be given by the execution of a form prescribed by the department and before an agent thereof; when it provided further that this consent should be accepted by the department and filed in the adoption proceedings, it could only have meant, although not expressly so declaring, as it later did, that the consent which the statute required was then to be considered as having been given irrevocably. We think that from that moment on the consent continued without the power of revocation until the court should have ruled on the adoption. This assumes, of course, that the consent was, as the form declared it to be, fully and freely given without fraud or duress, but we think that when such real consent had been so given it was intended that the statutory requisite of consent had thereby been irrevocably supplied.

If the consent is irrevocable then its attempted withdrawal has not deprived the superior court of jurisdiction to proceed. This, however, is not to say that the doors of the court are closed to the mother. Under our laws that court is charged with the duty of determining, on the hearing of the adoption petition, whether adoption is then for the best interest of the child, all the facts and circumstances being considered, and if she desires to do so, the mother may contest the adoption, even though she has given consent at an earlier time. The welfare of the child can never be excluded from the issues, no matter what preliminary action its parent or parents may have taken. The changed conditions of either the proposed adopters or of the consenting parents may heavily weight the scales for or against the granting of the petition.

In *Erickson* v. *Raspperry*, 320 Mass. 333 [69 N.E.2d 474], where consent to adoption had been given by the mother of an illegitimate child and where, after such consent, the mother had married and upon proof thereof the court in which the proceedings for adoption were pending found that it was for the best interests of the child that the adoption should be denied and the child restored to its mother, the court said at page 475 [69 N.E.2d]:

"Relying upon the findings of the judge that the respondent had originally assented in writing to the allowance of the petition, that her consent was given voluntarily and with full knowledge of the effect of her consent and the effects of adoption, and that the petitioners are proper persons to bring up the child, the petitioners argue in substance that the respondent's consent to the petition was binding upon her and irrevocable and that the judge was without authority to dismiss the petition. The consent of the respondent to the petition, however, was not binding upon the judge. . . . It was the duty of the judge to be guided by the established principles governing the disposition of petitions for adoptions, the most fundamental of which is that the paramount issue is the welfare of the child. [Citing cases.] That question the judge has resolved in specific terms in favor of the respondent upon findings before set forth which support his decision."

Suppose here, for instance, that after consent and before adoption the natural father should come forward and marry the child's mother, as the mother here alleges is their mutual intent, thus legitimating the infant, such legitimation, considering its effect upon the child's welfare alone, might per-

suade the court that adoption should not be ordered. In saying this we do not pass upon the question of whether such marriage during adoption proceedings would make it jurisdictional that the consent of the natural father should then be secured, as was held in *In re Adoption of Doe*, 231 N.C. 1 [56 S.E.2d 8], since that question is not before us. On the other hand, suppose some intervening, or theretofore unknown, occurrence in the life of one of the petitioners in adoption should convince the court their petition should not be granted, surely that court could, in the exercise of a sound discretion and for the welfare of the child, deny adoption. It is quite apparent that proceedings for adoption under our statutes are something much more than mere solemnization of a contractual relationship, and that there are committed to the court by the pertinent legislative enactments grave judicial functions transcending the immediate desire of petitioners for adoption and of consenting parents; and while it is true the statutes do not provide expressly how the matters we have been discussing shall in all instances be put in issue and tried, yet we have no doubt the court could and would adopt a procedure sufficient to permit interested and proper parties to appear and present evidence to the end that the substantial and underlying issue of child welfare will be properly decided.

Of course what we have said about the revocability of consent would have but limited, if any, application when consent had been given under the 1949 amendment *re* consent, for therein the Legislature has provided expressly that the consent cannot be withdrawn without court action and has further provided a means of application for such order. Therefore, the Legislature has impliedly declared that the consent is not now irrevocable absolutely. What we have said is that before these amendments took effect the consent, when fairly given, was irrevocable; that the matter of consent was thenceforth behind the parties and the court; but that the court must still go forward to determine all other issues involved and that it had full jurisdiction to do so.

In arriving at the foregoing holdings we have given attention to recent holdings by our appellate courts, both District and Supreme, but we think those decisions are not decisive here. We refer to *Adoption of McDonnell*, 77 Cal.App.2d 805 [176 P.2d 778], *Adoption of Parker*, 31 Cal.2d 608 [191 P.2d 420], and other appellate decisions cited to us. But the statutory changes intervening materially distinguish those

cases from this. Also the form of consent required has been changed by the Department of Social Welfare, probably influenced by those same decisions. The consent executed by petitioner was couched in terms of finality conditional only on an order of adoption and nothing in the form here used indicates either an optional or conditional consent. The courts deciding the cited cases were much concerned with acceptance of consent, but after the opinions therein were rendered the Legislature made it the express duty of the department to accept the consent when given, leaving nothing to the discretion of the department in that matter. We think we must assume the department did its duty, certainly where, as here, no showing to the contrary is made. That having been done, the consent being full and free when made, it remained for the department in this case to go forward and file with the court its report touching the final question of adoption or not. But that final determination is for the court and it has jurisdiction to proceed. Therefore, the writ heretofore issued must be discharged.

When this matter was heard in this court a request was made and granted that the Department of Social Welfare might, through its counsel, file a brief herein for the purpose, as we understood it, of informing the court as to its interpretation of the statutes in the matter of consent and the reasons therefor. No such brief has been filed. However, we have examined the Manual of Adoption Policies and Procedures and find the following with respect thereto: Prior to the 1945 amendment it was the policy of the department that where possible a sufficient investigation of the case be made to determine the advisability of the adoption before the consent was signed and then it was the policy and practice of the department when the consent was taken to make it clear to the natural parents that the consent might be withdrawn at any time prior to the final court action on the petition. Further it was to be explained that the consent would not be accepted by the department until a determination had been made that the adoption was for the child's best interests. After the 1945 amendment the manual noted that it was then the duty of the department to accept the consent of the natural parents and the wording of the consent form was changed and the directive that the parents consenting should be informed that the consent was revocable was omitted. However, the manual stated: "While the consent may be withdrawn

by the parent prior to the court order granting adoption, the agent should help the parent recognize that in fairness to all parties the execution of the consent should represent as nearly as possible a final decision.'' It is thus apparent it was still the department's interpretation, contrary to what we have herein said, that the consent, although accepted by the department, could, nevertheless, be withdrawn by the consenting parent at any time before court order granting adoption. The petition before us does not contain any allegation upon the subject of whether petitioner here was told by the department that she would have the right to withdraw her consent; no evidence was presented upon the point; and the briefs do not discuss any contention that the petitioner here was so informed, relied upon such information and believed when she informed the department that she was withdrawing her consent that she was exercising a right which had been reserved to her. We cannot assume that any such statements were made and what we have said relative to the matter is said because we do not wish our holding herein to be considered as including any determination of what the effect would be upon the revocability of consent if obtained under such circumstances as would justify the mistaken belief on the part of the parent giving such consent that it could be withdrawn at any time before an order of adoption was made.

The writ is discharged.

Adams, P. J., and Peek, J., concurred.