[Civ. No. 24213. Second Dist., Div. Three. July 26, 1960.]

Adoption of ARLYN PATRICIA BIRD, a Minor. FRANK MARTIN CELUSTA, JR., Respondent, v. DALE BIRD, Appellant.

*Assigned by Chairman of Judicial Council.

Richard B. Bardwil for Appellant.

Walleck, Olstyn, Johnson & Shane for Respondent.

FORD, J.—In this adoption matter, the minor's natural father, Dale Bird, has appealed from the order denying his motion to vacate and set aside the decree of adoption and from the order granting the motion of the adoptive father, Frank Martin Celusta, Jr., for the entry of such decree *nunc pro tunc* as of the date upon which Celusta's petition for adoption was heard.

The child was born on March 30, 1954, while the mother was married to Dale Bird. That marriage was terminated by divorce. On November 15, 1957, the mother, who had custody of the child, married Frank Martin Celusta, Jr. The natural father, Dale Bird, also remarried. On January 31, 1958, the mother's attorney wrote to Mr. Bird with respect to his delinquency in the payment of support for the child. Mrs. Bird answered that letter on behalf of her husband and submitted information bearing on their financial difficulties. This information related to a miscarriage suffered by Mrs. Bird and to the matter of Mr. Bird's lack of steady work for a period of time. On February 12, 1958, the attorney again wrote to Mr. Bird and acknowledged the receipt of a check for $20 for the support of the child. In that letter it was further stated that the mother had informed her attorney that if Mr. Bird was willing to relinquish his rights to the child, "she and her present husband will commence adoption proceedings forthwith." On February 19, 1958, Mr. Bird replied: "Regarding your letter of February 12, 1958 please proceed with adoption proceedings as stated." On March 25, 1958, Mrs. Bird wrote to the attorney and stated that " [w]e would like to know the nature of the progress being made regarding the adoption of Arlyn." She requested an answer at the addressee's earliest convenience. On April 1, 1958, the attorney replied that on March 25 the petition for adoption had been sent to Mr. Bird and his prompt attention to the matter of signing the document in the appropriate place was requested. On April 3, 1958, Mr. Bird wrote the attorney that he would be "most happy to sign the documents" when there was included therein a provision for visitation rights for his parents, grandparents of the child. At the time of the hearing on the motion to vacate the decree of adoption, the attorney testified that he sent to Mr. Bird a letter bearing the

date of April 8, 1958, by which letter he informed Mr. Bird that "no provisions for visitation can be provided under the law after the adoption papers have been approved by the court." Mr. Bird testified that he had no recollection of having received that letter. On April 15, 1958, the petition for adoption was filed in the superior court. It bore Mr. Bird's signature under the statement that: "I HEREBY join in the foregoing petition and consent to the adoption of my child by the petitioner FRANK MARTIN CELUSTA, JR." On June 27, 1958, in the presence of a deputy probation officer of the county of Los Angeles, Mr. Bird signed a formal "Consent to Adoption When One Natural Parent Gives Custody to Husband or Wife of Other Natural Parent." The petition for adoption was heard on October 1, 1958. The minutes of the court contain, in part, the following statements: "Petition is granted" and "Decree signed and filed herein this date." However, the decree was not entered until October 7, 1958. But before such entry, on October 6, 1958, Mrs. Celusta, the mother, unexpectedly died.

On December 4, 1958, Mr. Bird filed a notice of motion to vacate and set aside the decree of adoption. The grounds stated therein were: (1) that at the time that the decree was entered, the court did not have knowledge of the fact of the death of the mother which, had it been known, would have caused the court to refrain from having the decree entered; (2) that Mr. Bird would not have given consent to the adoption by Mr. Celusta, the stepfather, alone; (3) that the "consent and decree were taken against the natural father, Mr. Bird, through his mistake, inadvertence, surprise and excusable neglect"; (4) that the consent and decree were taken against the natural father under circumstances of duress, mistake and misunderstanding; (5) that Mr. Celusta failed to notify the court of the death prior to the entry of the decree; and (6) that the natural father, Mr. Bird, and his present wife desire to have the child in their home and that the vacating of the decree would be "for the best interest of said child." In support of his motion, Mr. Bird filed his affidavit. Therein he made reference to his correspondence with the attorney for his wife. He further stated in part as follows: He understood he would have visitation rights with respect to his daughter at the home of his parents after the adoption; he would not have given his consent to her adoption by Mr. Celusta alone; the child "is presently residing at the home of her grandparents [the parents of the deceased

mother]''; he ''will assume all the responsibility of a father towards his child''; and he ''did not understand the legal effect of the adoption and understood that he would be permitted reasonable visitation rights as requested and as a condition for giving his consent as set out in his letter to his former wife's attorneys, dated April 3rd, 1958.''

On January 22, 1959, Mr. Celusta filed a notice of a motion for an order directing entry of the decree *nunc pro tunc* as of October 1, 1958. It was supported by an affidavit of his attorney.

Both motions came on for hearing on January 30, 1959, before a judge other than the judge who had heard the petition for adoption. Counsel for Mr. Celusta had caused certain affidavits to be filed on January 23, 1959, in opposition to Mr. Bird's motion, but they were not served on counsel for Mr. Bird until the day of the hearing. Since it appears from the record that the court did not consider such affidavits, we refrain from further reference to them. Certain witnesses were heard, including Mr. Bird. Mr. Celusta did not testify. Inasmuch as Mr. Bird's complaint with respect to the matter of the conduct and scope of the hearing is primarily based upon the court's limitation of issues, it is not necessary to summarize such testimony. The position of the court upon which the claim of error is predicated is evidenced by the following excerpt from the record: ''MR. BARDWIL [counsel for Mr. Bird] : If I understand the Court, as of this moment, then the Court feels that you just as soon not have any testimony on what's for the best interests of the child. THE COURT: I'm afraid we'll have to resolve it down to that, counsel. You stated it correctly. MR. BARDWIL: OK. THE COURT: I would be glad to have any evidence that Mr. Bird, that the decree was entered through inadvertence, surprise, excusable neglect, fraud, mistake, anything of that type.''[1]

At this point, we are not primarily concerned with the matter of the propriety of the order granting the motion for entry of the decree *nunc pro tunc* as of October 1, 1958, inasmuch as the determination of that question depends on the conclusion which is reached with respect to the order denying the motion for the vacation of the decree of adoption. ▮▮▮ Since the decree was not effective for any purpose until it was entered, the trial court could have ordered the entry of a decree denying the adoption had the death of the child's

---

[1]Earlier the court had stated: ''. . . but I don't think we can debate the relative merits of the Celusta home against Mr. Bird's home.''

mother been called to its attention prior to the entry of the present decree. (*Phillips* v. *Phillips,* 41 Cal.2d 869, 874 [264 P.2d 926].)　 But even after the entry thereof, such decree could be vacated upon such grounds as would entitle the court to vacate any other order or decree. (See *Arnold* v. *Howell,* 98 Cal.App.2d 202, 207-208 [219 P.2d 854]; 1 Am. Jur., Adoption of Children, § 72; annotation, 2 A.L.R.2d 887, 889.) While we have found no precedent which furnishes a ready answer to the problem presented in the case now before the court, there are authorities which, while not directly in point, furnish guidance toward a resolution thereof. Thus in *Batchelor* v. *Finn,* 169 Cal.App.2d 410 [337 P.2d 545, 341 P.2d 803], the court had before it a matter which "was left to the trial judge at the default hearing upon a false basis, due to the express statements of the witness and his suppression of certain facts and a document material to the hearing." In upholding the determination of the trial court that such facts constituted a fraud upon the court, the appellate court said, at page 416: "The circumstances point to a deliberate suppression and it seems that the trial judge would not have rendered the money judgment in question had he known the terms of the written agreement. . . ." (See also *Miller* v. *Higgins,* 14 Cal.App. 156, 162-163 [111 P. 403].) The court in the Batchelor case quoted the following statement from *Gordon* v. *Gordon,* 145 Cal.App.2d 231, at page 235 [302 P.2d 355]: "When a trial judge in a proper proceeding vacates a judgment he has rendered in ignorance of material facts which he believes a party had a duty to disclose to him, and which, if known to him, would have caused him to refrain from ordering the judgment, we will not question his action." In *Security-First Nat. Bank* v. *Hauer,* 47 Cal.App.2d 302, the court said, at page 306 [117 P.2d 952]: "In the affidavit filed in support of the motion for the original summary judgment, it was expressly averred that the sales agreement had not been terminated. Technically that was true for at the time of filing the motion the only notice which had been served upon defendant was its declaration that it would at a future date declare a forfeiture. But the actual termination of the contract before the entry of the judgment, and the failure to inform the court of such forfeiture, was its own denial of the very averment made in its affidavit to the effect that the sales agreement had not been terminated and that defendant's rights had not been for-

feited. By its latest act plaintiff had so altered the material facts upon which the original summary judgment was granted that the entry of such judgment was no longer warranted. The concealment of the fact of its actual forfeiture of plaintiff's rights under the sales agreement constituted a fraud and justified the order setting aside the original judgment.''

It is true that in the present case there was no claim of suppression of any pertinent matter at the time of the hearing, aside, perhaps, from such a claim as could be found in the father's assertion that he understood that provisions would be made for visitation. Moreover, there is nothing to indicate that either Mr. Celusta or his attorney was aware of the fact that the decree had not been entered at the time of the mother's death. No deliberate intent to mislead the court was shown. But the fact still remains that if a material factor upon which the court based its determination that the petition for adoption should be granted had become nonexistent before the decree became effective by entry, upon becoming aware thereof the trial court could have caused the withholding of the entry of the decree and reopened the matter for the purpose of reaching a conclusion as to whether its prior determination should stand. (See *Alvak Enterprises* v. *Phillips,* 167 Cal.App.2d 69, 74 [334 P.2d 148, 338 P.2d 582].) But, if not made aware of such vital change in circumstances prior to entry of judgment, even in the absence of actual fraud the court should not be precluded from vacating a judgment or decree when such essential fact, upon the basis of which the matter was determined, ceases to exist in the period between the hearing and the entry of the decree. That the court be fully informed before its judgment becomes effective is essential to its integrity whether its lack of information is brought about by fraud or because of circumstances over which neither it nor the interested parties have control. In 1 Freeman on Judgments (5th ed.), it is stated at pages 432-433: ''Where the court has been deceived or is laboring under a mistake or misapprehension as to the state of the record or as to the existence of other extrinsic facts upon which its action is predicated, it may vacate the judgment which it would not otherwise have made.'' (See *Key System Transit Lines* v. *Superior Court,* 36 Cal.2d 184, 187-188 [222 P.2d 867].)

 In determining whether the change of circumstances bears such an essential relationship to its prior disposition of the matter as to require the vacation of the decree, the

court of necessity must use as the primary criterion the best interests of the child. Such interests are of paramount concern where an adoption is sought (*In re Hickson*, 40 Cal.App. 2d 89, 92 [104 P.2d 411]) and do not cease to be so upon consideration of a motion to vacate a decree of adoption. Pertinent language is found in *In re Barents*, 99 Cal.App.2d 748, at page 753 [222 P.2d 488] : "The welfare of the child can never be excluded from the issues, no matter what preliminary action its parent or parents may have taken."

We turn, then, to the question of whether the court in determining the effect of the mother's death improperly limited the scope of the inquiry. The solution of that question requires some consideration of the nature of a stepparent adoption. It obviously involves elements which are different in nature from those present where persons who seek to adopt a child are not related to the child by blood or affinity.[2] The status of stepparents arises out of the marital relationship of such person with a natural parent of the child. When death of the natural parent occurs, it may have a substantial impact insofar as the interests of the child are concerned. It is obvious that such a sudden turn in the factual situation as that which occurred in the case presently before this court makes necessary a careful inquiry into what is in the best interests of the child under circumstances not theretofore

---

[2]Professor Jacobus tenBroek, in an article in 6 Hastings L. J. 261, succinctly states, at page 268: "Stepparent adoptions have few of the features and almost none of the problems of ordinary adoptions. The children are generally older than in case of adoption by non-relatives; in fact, they are most often not infants. Their birth status is a socially acceptable one, i.e., they were born in wedlock. There is no problem of finding a home and placing the child in it; he is already there. A determination of the suitability of the adoptive home is virtually meaningless. The child is with one natural parent who has the right of custody and control; and that natural parent is married to and living in the same household with the stepparent. A denial of the adoption petition does not result in removal of the child from the home, whether adjudged suitable or not. The reasons for adoption are not the social protection of the child or providing him with a family and home. These he already has. The reasons for adoption are legal and financial, to endow the parent-child relationship with a legal status and attendant rights and duties, entitling the child to such rights as guardianship, inheritance, support, and the name and status in the family that he would have had if he had been born to both parents, and entitling the stepparent to rights of custody, control, services and earnings. In this sense, the effect of a stepparent adoption is to legalize an already existing family relationship, not to establish a new one."

It is to be noted that the process of investigating a proposed stepparent adoption differs from that in the case of adoption proceedings undertaken by other persons. (See Civ. Code, §§ 226, 227a.)

subject to close judicial scrutiny.[3] An instance of a portion of the subject-matter which would be included in such inquiry is the matter of the future home and supervision of a child of such tender years. Mr. Bird, in his affidavit, stated that the child was living with her maternal grandparents. But there had been no award of the custody to the grandparents and the natural father had not relinquished his rights in the child to them. (*Cf. Roche* v. *Roche,* 25 Cal.2d 141 [152 P.2d 999].) While that home may also have become the home of Mr. Celusta after the death of Mrs. Celusta and while, if that be the fact, the presence of the child there under the care of Mr. Celusta may be in her best interests, that phase of the matter was removed from consideration by the court's ruling that no inquiry into the subject of the best interests of the child would be permitted.

We have accordingly come to the conclusion that while the death of Mrs. Celusta did not, in and of itself, require that the court vacate and set aside the decree of adoption, there was prejudicial error on the part of the court in restricting the scope of the hearing with respect to the motion of the natural father. In reaching this conclusion, we have not overlooked that portion of Mr. Bird's testimony on cross-examination which was as follows: ''Q. As I understand it, Mr. Bird, you're seeking to upset and set aside this decree of adoption of Arlyn on the ground that you felt that you would have visitation rights notwithstanding the fact that you signed the consent to the child's adoption by Mr. Frank Celusta. Is that right? A. Yes. Q. That's your principal and only ground for seeking to upset the decree. Is that correct? A. Yes.'' We do not believe that such testimony should stand as a bar to the adherence by the court to its duty of making a plenary inquiry as to what is in the best interest of the child in the light of the circumstances brought about by the unanticipated death of the mother. As stated in *In re Barents, supra,* 99 Cal.App.2d 748, at page 750: ''The state . . . is of course charged with a continuing interest in the welfare of children within its borders and our state has surrounded the matter of their custody and care, including their adoption, with many protective statutory laws.''

The order denying the motion of appellant to vacate and set aside the decree of adoption and the order granting the

---

[3]As expressed by the court at the hearing in this matter: ''What the decree did was in effect to adopt the child to a person, a single person as of that date.'' (See also 3 Ops. Cal. Atty. Gen. 129.)

motion of respondent for entry of the decree of adoption *nunc pro tunc* as of October 1, 1958, are reversed. The superior court is directed to hear such matters de novo in conformity with the views herein expressed.

Shinn, P. J., and Vallée, J., concurred.