In the Matter of Petition of Edward Wojtkowiak and Marguerite Wojtkowiak, his wife, Appellees, to Adopt Kathleen Slush, sometimes described as Doree Marie Slush, a minor, Jean Meyerhoff, also known as Jean Slush, Natural Mother, Appellant.

Gen. No. 47,109.

First District, First Division.
June 19, 1957.
Released for publication October 4, 1957.

344

Allen M. Quinn, of Chicago, for appellant.

Stanley S. Jasinski and Mitchell Kilanowski, of Chiago (Mitchell Kilanowski, of Chicago, of counsel) for appellees.

JUDGE SCHWARTZ delivered the opinion of the court.

Plaintiffs filed a petition for the adoption of Kathleen Slush, whose natural mother is Jean Meyerhoff, also known as Jean Slush, herein referred to as the defendant. Defendant had signed a consent to the adoption as required by the Adoption Act. (Ch. 4, Sec. 3—6, Ill. Rev. Statutes 1955.) An amendment to that Act passed in 1953 (Ch. 4, Sec. 3—7, Ill. Rev. Statutes 1955) provides that consent to adoption executed and witnessed or acknowledged in accordance with the provisions of that Act shall be irrevocable unless obtained by fraud or duress and a court of competent jurisdiction shall so find. Defendant contends that the consent was obtained by duress and that the acknowledgment was not as prescribed by law. On these issues the cause was tried by the court and a decree of adoption entered.

Defendant was born in Chicago January 23, 1927. When she was five years old her parents were separated and when she was twelve, they were divorced. She and her mother went to live with her mother's parents. Defendant knows nothing about her father's present

circumstances except that he lives in the state of Washington. Defendant is of the Methodist faith. She was married when young to one Meyerhoff, of the Jewish faith. They had three children. They were divorced in 1952, and defendant and her children went to live with her mother, who is employed by the United States government. In 1955 defendant became pregnant by a married man. Early in her pregnancy she discussed with her mother the question of giving the child for adoption. When she was seven months pregnant she went to see Dr. Lydia A. Zaleska, a physician recommended by a friend. Dr. Zaleska saw her three times before she was delivered. There was discussion with respect to adoption. The doctor told defendant she faced the prospect of losing the care of her three children if her ex-husband discovered the fact of her pregnancy. The physician advised adoption and told her she knew people who wanted a child. The baby was delivered at the South Town Hospital November 4, 1955. She weighed 4 pounds, 13 ounces, somewhat under normal, and for that reason the regulations required that the baby remain in the hospital longer than usual. The doctor received $75 from plaintiffs in payment of her bill for medical services.

In the meantime, defendant having indicated consent, plaintiffs had selected an attorney to look after the adoption proceedings. The doctor took the defendant to the attorney's office on November 9, 1955. He said nothing to her about the question of consent but took her directly to the Cook County Bureau of Public Welfare for an interview with a welfare worker. This is a prerequisite to the procuring of the acknowledgment by the Clerk of the signing of the certificate, designed to assure a voluntary and deliberate consent. The attorney left her alone with Cecile E. Roche, a welfare worker. Defendant was with Mrs. Roche about 45 minutes and at the conclusion of the interview Mrs. Roche gave her the "slip," (a statement that the re-

346

quired interview was had) and told her to take it to the County Clerk's office and there sign her consent and have it acknowledged. When the attorney returned, he and defendant went to the County Clerk's office. The "slip" was presented and a deputy clerk then took the consent form. According to the attorney's testimony the clerk asked defendant whether she knew what it was, explained it to her, and asked her to sign it, which she did. He then affixed the signature of Edward J. Barrett to the acknowledgment and imprinted the seal of the County court. The deputy clerk did not recall the incident but said that in normal cases he made it a practice to ask the person to read over the document and to understand that it was a consent for adoption. He said he always required the statement from the Department of Public Welfare confirming the interview. Defendant denies that the clerk said anything to her.

Cecile E. Roche was living in Rochester, New York, at the time of the trial but her statement was admitted by stipulation. Defendant told Mrs. Roche that she discussed the matter of adoption with her mother early in her pregnancy and that her mother had told her she would have to make the decision herself; that she also discussed the matter of adoption with a friend, Mrs. Dillon; that she wanted to keep the child, but knew that in later years she would have to explain this child and also explain the matter to her ex-husband. Mrs. Roche asked her if she would like to think this matter over and return another day. Defendant said "It would be just as difficult whenever I did it. I do not believe so." She was disturbed because the adopting parents were Catholic. Mrs. Roche told her that the parents' wishes in that regard were generally respected. After some hesitancy, defendant decided to go through with the adoption. She also told Mrs. Roche she was glad she herself would not have to get the baby from the hospital and give her to the foster parents.

■ The court after hearing argument on the question of duress said that if any duress existed, it was in the statement alleged to have been made by Dr. Zaleska that if defendant retained her baby, her ex-husband would probably be able to take her three children born of their marriage. The court pointed out that defendant had seen many people about the matter, including employees of the Legal Aid Bureau, and that every one tried to help her. The court said he was impressed with the fact that defendant was very alert the day of the interview with Mrs. Roche. She knew how many pieces of paper Mrs. Roche had before her on which she was making notes and whether the notes were in shorthand or longhand, and she knew where to get legal information on the question of what her ex-husband could do in the event she kept the child. The court concluded that there was no duress. His finding in this respect is not to be set aside unless it is against the manifest weight of the evidence. Flug v. Craft Mfg. Co., 3 Ill.App.2d 56, 120 N.E.2d 666; In Re Matter of Gleason v. Black, 1 Ill.App.2d 409, and cases there cited.

In Cardenas v. Cardenas, 12 Ill.App.2d 497, 140 N.E.2d 377, we referred to the tremendous increase in the number of children of broken homes and the social problem involved in their care. The problem is to some extent mitigated by the increased demand for adoptions. With this increase, however, came litigation by natural parents following remorse over the surrender of children. It is important that consent should not be forced, but it is also important that the regret and misgiving which always arise after a decision born of emotional and moral conflict should not be permitted to create instability and confusion. It was not the voice of Dr. Zaleska that defendant heard. It was that inner voice of the mother who thought of the difficulties that would beset her child in a harsh world which has not yet learned to accept the innocents.

 Courts have heretofore been inclined to favor the demands of the natural parents and to overlook the anguish which may follow separation of foster parent and child. The amendment of 1953 is to some extent a change of policy in that the legislature has recognized the need for stability and that a consent once having been freely and formally given should not be set aside except for fraud or duress. The child in the instant case is now over a year and a half old. We have noted that litigation concerning these matters can go on for years and become causae celebre, while the body of the little victim is shuttled back and forth. The statute in question is a salutary measure made in the interest of the child, the natural parents and the foster parents. Fraud and duress are the conditions for revocation of consent. Duress which is here urged is defined as personal restraint or fear of personal injury or imprisonment or the deprivation of one's freedom of will by the unlawful act of another, or where one is induced by another's unlawful act to perform some act under circumstances which prevent his exercising free will. (Cyc. Law Dictionary, p. 338; Stoltze v. Stoltze, 393 Ill. 433, p. 442.) It is true that the doctrine of duress has been extended in some recent decisions, but the measure of this enlargement is not relevant here. Defendant had a difficult decision to make. At the time she gave it legal finality there was no compulsion. The finding of the trial court is amply supported by the evidence.

 It is argued that it is an essential element of acknowledgment that the person who acknowledges should admit in some form of words the validity and binding force of the instrument and that this must be done before the Clerk of the court. The trial court observed that the clerk in this jurisdiction would find it physically impossible to take care of all such matters personally. The statute (Ch. 25, Secs. 9 and 10, Ill. Rev. Stat. 1955) provides for deputy clerks. Taking ac-

knowledgments is within the deputy clerks' authority. Albert Pick & Co. v. Spoor, 212 Ill. App. 612, 614. Defendant relies upon the case of In re Petition of Thompson v. Burns, 337 Ill. App. 354. In that case there was no executed certificate of acknowledgment on the consent nor was one filed in the adoption proceeding. In the instant case the acknowledgment was properly taken.

Judgment affirmed.

ROBSON, P. J. and McCORMICK, J., concur.