In Matter of Petition of James Simaner, Jr. and Margaret Simaner, his wife, to Adopt Joseph Simonick, a minor.

James Simaner, Jr. and Margaret Simaner, his wife, Petitioners and Respondents below, Appellees, v. Joseph Simonick and Jeanette Simonick, his wife, Intervening Petitioners, Appellants.

Gen. No. 47,204.

First District, First Division.

December 23, 1957.

Released for publication February 10, 1958.

■■■■■■

Frederick J. Bertram, of Chicago, for appellants.

Edwin W. Jackson, and Robert E. Cronin, of Chicago, for appellees.

JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal by Joseph Simonick and Jeanette Simonick, parents of Joseph Simonick, Jr., a minor, from an order entered by the County Court of Cook county after hearing on an intervening petition allowed to be filed in an adoption proceeding concerning the said Joseph Simonick, Jr.

Joseph Simonick, a minor, was the illegitimate child of Jeanette Lave and Joseph Simonick, Sr., who had been living together. The child was born on March 26, 1955. On October 27, 1955 Jeanette Lave left the child at St. Vincent's orphanage after an interview at the Catholic Home Bureau, and on November 23, 1955 Jeanette Lave signed a consent for adoption. On March 4, 1956 a second illegitimate child was born to the same parents, who were married on April 21, 1956.

The child was placed by the Catholic Home Bureau in the home of James and Margaret Simaner for adoption. About March 15, 1956 Jeanette Lave contacted the Catholic Home Bureau authorities and attempted to orally revoke her consent for the adoption of the child. The Simaners filed their petition to adopt in the County Court on June 27, 1956. On that date an order was entered by the court appointing a guardian for the child. On July 27, 1956 the appearance of the intervening petitioners was entered and on September 18, 1956 a petition to intervene was filed by the Simonicks.

The petition in substance set up the marriage of the Simonicks on April 21, 1956; that Joseph Simonick, Sr. has not executed a consent and does not consent to the adoption; that Jeanette Simonick, the parent and

mother of Joseph Simonick, Jr. signed the consent to the adoption of the child at a time when "she was under great mental stress and emotional tension and disturbance," and the petition prayed that the Simonicks be permitted to intervene in the adoption case and that Jeanette Simonick be granted leave to withdraw her consent to the adoption.

The County Court on October 25, 1956, after a hearing on the intervening petition, the filing of which had been permitted, held that no fraud or duress was used to procure the consent to adoption signed by Jeanette Simonick and that her petition for leave to withdraw the same was denied, and it further found that Joseph Simonick, Sr., the alleged father of the child, had no rights in the matter. An appeal is taken from this order. The court at the same time continued the entry of a decree of adoption until the case now before us would be decided.

There are two contentions before us: one, that Jeanette Simonick had a right upon the evidence introduced in the hearing to withdraw her consent to the adoption, and the other that the adoption case could not proceed, nor could any decree be entered therein, without the consent of Joseph Simonick, Sr. to the adoption of the child.

The document termed a consent, signed by Jeanette Lave on November 3, 1955, surrendered the management, control and custody of her child to the Catholic Home Bureau, a licensed child welfare agency. It also provided that she gave the Bureau authority to place him in a home for legal adoption, that she consented to the legal adoption of the child by such persons as the officers of the Bureau shall deem to be for the best interests of the child, without notice to her and without her consent, and gave the Bureau full authority to enter its appearance and that of its superintendent in any proceeding brought for the legal adoption of

51

the said child. The consent was properly acknowledged.

An amendment to the Adoption Act passed in 1953 (Ill. Rev. Stat. 1955, ch. 4, par. 3—7) provides that a consent to adoption, properly executed, shall be irrevocable unless it shall be obtained by fraud or duress and a court of competent jurisdiction shall so find. The burden of proving duress rested upon the intervening petitioners in this case (Stoltze v. Stoltze, 393 Ill. 433), and the finding cannot be set aside unless it is against the manifest weight of the evidence. In re Wojtkowiak, 14 Ill.App.2d 344; Flug v. Craft Mfg. Co., 3 Ill.App.2d 56; In re Matter of Gleason v. Black, 1 Ill.App.2d 409; In re Petition of Balota, 7 Ill.App.2d 178. In Stoltze v. Stoltze, supra, duress is defined as the condition which exists where one is induced by the unlawful act of another to make a contract or perform or forego an act under circumstances which will deprive him of the exercise of his free will. There must be such compulsion affecting the mind as shows that the execution of the contract or other instrument was not the voluntary act of the maker. Mere annoyance or vexation will not constitute duress.

Jeanette Lave, on September 15, 1955, when she had her first interview with a representative of the Catholic Home Bureau, was then three months pregnant with a second child by Joseph Simonick, Sr., and the representative made arrangements for living quarters for her during the pendency of her pregnancy upon her agreement that she would end her relationship with Joseph Simonick, Sr. At that time she said she intended to leave Joseph Simonick, Jr. with the Bureau and they would place the child at St. Vincent's orphanage. On October 27th she left the child at St. Vincent's and the next day left Joseph Simonick, Sr. and went to the home provided for her. About two weeks prior to November 23, 1955 she discussed with a representa-

tive at the Bureau the giving of a consent for adoption and offered on that date to sign her consent. The representative told her to wait and give her consent later on. Two weeks later, on November 23rd, she signed the consent, and at that time the representative of the Catholic Home Bureau told her that she would have five days in which to change her mind about the consent. He told her that the consent was irrevocable and that she would never know the identity of the people with whom the child would be placed for adoption. The fact that the mother was mentally disturbed at the time, as all women would be under similar circumstances, does not constitute duress. Her act was deliberate and undoubtedly, as she felt at the time, for the best interests of the child. On the record the trial court properly found that the intervening petitioners failed to establish duress or fraud as required by the statute.

The second question to be decided is as to whether Joseph Simonick, Sr. was entitled at the hearing before the County Court to make an issue of the fact that he had not signed the consent for adoption.

■ ■ Adoption was unknown at common law and it is governed entirely by statute. The authority of the court to decree an adoption must be measured by the statute. Since the case of McConnell v. McConnell, 345 Ill. 70, the rule in Illinois is that a substantial compliance with the adoption statute is sufficient.

The question here raised, as to whether the subsequent marriage of the putative father with the mother making the child legitimate under the provisions of paragraph 15 of chapter 17 and paragraph 163 of chapter 3, Illinois Revised Statutes, 1955 so altered the situation as to make his consent a prerequisite to adoption, is one of first impression.

The statute governing adoptions which was in force at the time this proceeding was before the trial court

53

provided in chapter 4, paragraph 1—2 (Ill. Rev. Stat. 1955) that the petition should contain the name, if known, of each of the parents or surviving parent of such child. It further provides, in paragraph 2—1, that all persons named in the petition other than the petitioners shall be made parties defendant and they should be notified of the proceedings in the same manner as in other civil cases. The same section also provides that in all cases where the persons, or any of them, required to be made defendants and being under no legal disability have surrendered the child to a state licensed child welfare agency for the purpose of adoption and such agency is authorized to consent to the adoption of the child without notice to and without the consent of such persons, or any of them, who are required to be made defendants, no person other than such licensed child welfare agency need be made a party defendant, and the consent of such child welfare agency shall be sufficient to authorize the court to enter a decree of adoption, providing such fact is shown. The consent of the parents, if living, is essential to a valid adoption of a child except under the circumstances dispensing with such consent provided by statute.

█ In the case before us the mother, on November 23, 1955, had surrendered the custody of the child to the Catholic Home Bureau, a licensed welfare agency, and had signed a consent for adoption which the court properly found was irrevocable. At the time when she signed the consent the putative father had no rights under the statute with reference to the adoption or custody of the child. 1 I. L. P. Adoption, sec. 21; Carter Oil Co. v. Norman, 131 F.2d 451. The question which we must determine is whether or not the fact of the subsequent marriage of the putative father with the mother before the filing of the proceedings for adoption and the consequent legitimization of the child

54

gives to the father the right to resist the adoption on the ground that no consent had been given by him.

■ ■ The child was born on March 26, 1955 and was left by his mother with St. Vincent's orphanage on October 27, 1955 under and by virtue of an interview with the Catholic Home Bureau. On November 23, 1955 the mother executed an instrument giving the custody of the child to the Catholic Home Bureau and consenting to his adoption. Shortly after the mother formally relinquished custody of the child and consented to his adoption, the child was placed with the present petitioners who are now seeking to adopt him. The marriage of the parties occurred on April 21, 1956, some six months after the child was given up by the mother. No move was made by the mother until March 15, 1956, when she attempted to orally revoke the consent for adoption of the child and was told by the Catholic Home Bureau authorities that the child could not be returned to her. From that time until June 27, 1956 no action was taken either by the mother or the father with reference to the child. The legislature, by providing in paragraph 3—7 of chapter 4 that the consent to adoption shall be irrevocable unless a court finds that it has been obtained by fraud or duress, made a declaration of public policy. The purpose of the Illinois statute authorizing the adoption of children is to provide homes for children who may be so unfortunate to have none, and so to promote the interests of society. The practice of adoption is beneficial to the adopted child and likewise tends to serve the best interests of society and the state. 1 I. L. P. Adoption, sec. 2. It is the public policy of this state that the interest and welfare of the child should be considered primarily in adoption proceedings, and in 1957 the legislature re-enacted paragraph 3—7 and further provided that a surrender of the child to a licensed child welfare agency for the purpose of adoption should also

be irrevocable unless fraud or duress is shown. Ill. Rev. Stat. 1957, chap. 4, par. 3—7. A child is not a chattel. It would be a repudiation of the public policy as declared by the legislature, and contrary to the best interests of the child, to hold, as the intervening petitioners urge, that the laggard putative father, by a marriage with the mother occurring at any time before the filing of a petition for adoption, is vested with the right to control the adoption proceedings by either giving or refraining from giving his consent thereto. It must also be considered that the statute requires a delay of six months between the time when the child is taken to the home of the adoptive parents and the filing of a petition for adoption. During that period bonds of affection would undoubtedly have been forged between the adoptive parents and the child, and the breaking of such bonds might have a marked effect on the child both physical and psychological. It was to prevent such disturbances that the legislature made the consent of the parents to the adoption of the child irrevocable.

In the instant case the mother gave up the custody of the child and consented to his adoption. The father did nothing. The mother's action was caused by the fact that she was pregnant with a second child by the putative father and he had refused to marry her. At that time a marriage ceremony between them could have resulted in the child remaining with them at their home. The belatedly expressed interest of the father in the child can have no effect. No question has been raised with reference to the form of the petition, and the consent of the licensed child welfare agency to the adoption was exhibited in court. The trial court properly found that Joseph Simonick, Sr. had no rights in the adoption proceeding then before the court.

■ This case was first appealed directly to the Supreme Court upon the theory that the statute making the consent of the parent or parents to the adoption irrevocable unless duress or fraud is shown is unconstitutional. There is nothing in the record to indicate that any constitutional question was raised in the trial court. The Supreme Court transferred the case here on motion. We have no right to pass on any constitutional question. People v. Richardson, 397 Ill. 84; People v. Terrill, 362 Ill. 61; People ex rel. Austin v. Board of Com'rs, 316 Ill. App. 621; Brandtjen & Kluge, Inc. v. Forgue, 299 Ill. App. 585.

The trial court found that Jeanette Simonick could not revoke her consent to the adoption and that Joseph Simonick, Sr. had no rights in the adoption proceedings then before it. The ultimate question raised by these questions is as to whether or not the provisions of the Adoption Act were complied with. We find they were. As the trial court stated, cases such as these are difficult ones to decide. In In re Adoption of a Minor, 160 F.2d 928, the court observed: "Cases such as this have always been the unquestioned acme of difficulty in the administration of justice. The forfeit is the life of the child, wholly unconscious of the struggle about it. Both contesting pairs of parents act from the highest motives. Both are absorbed in affection for the child." However, it is the duty of the courts to follow the law as the legislature has declared it, and this the trial court did.

The order of the County Court is affirmed.

Order affirmed.

SCHWARTZ, P. J. and ROBSON, J., concur.