MATTER OF Y—J—G—

In VISA PETITION Proceedings

VP 16–I–23207

*Decided by Attorney General September 22, 1961*

**Preference quota status—Transfer to nonquota status—Act of September 22, 1959—Retention of parent-child relationship not affected by age of child.**

Petitioner who was admitted for permanent residence in 1955 as a nonquota immigrant under the Refugee Relief Act filed a petition, which was approved on December 10, 1957, to accord third preference quota status to his unmarried son, then 19½ years of age. Approval of the visa petition was automatically revoked on June 2, 1959, when the beneficiary-son attained the age of 21.

(1) Petition may be revalidated *ab initio* under the September 22, 1959 amendment to the Immigration and Nationality Act enlarging the third preference category to include unmarried sons or daughters of resident aliens.

(2) Upon revalidation, beneficiary's third preference status is transferable to nonquota status under section 4 or section 6 of the Act of September 22, 1959. Proviso in sections 4 and 6 that beneficiary, upon application for immigrant visa and for admission to the United States, be found to have retained his relationship to the petitioner, and status, as established in the approved visa petition, is satisfied, since

(a) Eligibility for preference quota status need not be continuous and uninterrupted. It is enough that eligibility existed at the time the petition was approved and at the time of the application for an immigrant visa and for admission to the United States.

(b) "Status" as used in the provisos refers to beneficiary's preference quota status as defined in section 203(a)(2), (3), or (4) of the Immigration and Nationality Act. Both marital status and age may be relevant to determining "status." In the instant case, fact that beneficiary is still unmarried is relevant to his third preference status but fact that he is now over 21 is not relevant because of 1959 amendment broadening third preference category to include unmarried sons and daughters.

### BEFORE THE ATTORNEY GENERAL

**DISCUSSION:** The Board of Immigration Appeals, at the request of the Commissioner of Immigration and Naturalization, has referred to me for review, as provided by 8 CFR 3.1(h), its order of October 4, 1960, that the petitioner's visa petition be approved for nonquota status under sections 4 and 6 of the Act of September 22, 1959, Public Law 86–363, 73 Stat. 644.

471

The petitioner, a native and citizen of China, 50 years old, was admitted to the United States for permanent residence on May 10, 1955, by virtue of a special nonquota immigrant visa issued under the Refugee Relief Act of 1953, as amended (50 U.S.C. 1971, *et seq.*). The beneficiary is the son of the petitioner, a native and citizen of China, born June 2, 1938.

The father first filed a petition on December 10, 1957, for preference status on the immigrant quota for his son under section 203 (a) (3) of the Immigration and Nationality Act, 8 U.S.C. 1153 (a) (3). Third preference quota status under this subsection was available to "the spouses or the children of aliens lawfully admitted for permanent residence." At this time petitioner's son was 19½ years of age. Although the petition was approved on January 31, 1958, an immigrant visa could not be issued because the quota for Chinese persons, including those eligible for preferences, was heavily oversubscribed. On June 2, 1959, the son attained his majority. Since he was no longer a "child" within the meaning of section 203(a) (3),[1] approval of the petition for a preference was automatically revoked pursuant to administrative regulation, 8 CFR 206.1(b) (5). Accordingly, the son's name was removed from the third preference quota waiting list and inserted on the waiting list of nonpreference quota immigrants.

The father then sought reconsideration of the petition under the Act of September 22, 1959, "An Act to provide for the entry of certain relatives of United States citizens and lawfully resident aliens." Section 2 of the Act amended section 203(a) (3) of the Immigration and Nationality Act so as to broaden the provision for third preference eligibility from "children," *i.e.*, unmarried minors, to "unmarried sons or daughters" of permanent resident aliens. The term "sons or daughters" includes persons over 21 years of age. Accordingly, under the provisions of section 203(a) (3) as amended by section 2 of the Act of September 22, 1959, the son, who is now over 21 years of age, is eligible for third preference quota status. It was not disputed at the hearing before the Board of Immigration Appeals that the petition may be revalidated *ab initio* for that category.

Sections 4 and 6 of the Act of September 22, 1959 provide for additional relief, namely, nonquota immigrant visas for certain classes of immigrants. The question before me is whether the son is eligible for nonquota status under the provisions of section 4 or section 6 of the 1959 Act.

Section 4 provides as follows:

Any alien who (1) is registered on a consular waiting list pursuant to section 203(c) of the Immigration and Nationality Act (66 Stat. 179) under

---

[1] Section 101(b) (1) of the Immigration and Nationality Act, 8 U.S.C. 1101(b) (1), defines "child" to mean "an unmarried person under twenty-one years of age."

a priority date earlier than December 31, 1953, and (2) is eligible for a quota immigrant status under the provisions of section 203(a)(2), (3), or (4) of such Act on the basis of a petition approved by the Attorney General prior to January 1, 1959, and the spouse and the children of such alien, shall be held to be nonquota immigrants and, if otherwise admissible under the provisions of the Immigration and Nationality Act, shall be issued nonquota immigrant visas: *Provided*, That, upon his application for an immigrant visa, and for his admission into the United States, the alien is found to have retained his relationship to the petitioner, and status, as established in the approved petition.

Section 6 provides as follows:

Notwithstanding the provisions of sections 3 and 20 of the Refugee Relief Act of 1953, as amended, special nonquota immigrant visas may be issued to aliens eligible to enter the United States for permanent residence under all the applicable provisions of the Immigration and Nationality Act: *Provided*, That each such alien is found to be the beneficiary of a visa petition approved by the Attorney General pursuant to section 203(a)(2) and (3) and section 205 of the Immigration and Nationality Act prior to January 1, 1959, and such petition was filed by a person lawfully admitted into the United States under the provisions of the Refugee Relief Act of 1953, as amended: *Provided further*, That, upon his application for an immigrant visa, and for his admission into the United States, the alien is found to have retained his relationship to the petitioner, and status, as established in the approved petition.

The record establishes that the son is eligible for nonquota status under both section 4 and section 6 [2] unless he is barred from eligibility by the proviso common to both sections "that, upon his application for an immigrant visa, and for his admission into the United States, the alien is found to have retained his relationship to the petitioner, and status, as established in the approved petition." There is no controversy as to the relationship, which is conceded to be established. The question is the meaning of the word "status."

The Assistant Commissioner, in his order of April 11, 1960, reviewed the legislative history of the Act of September 22, 1959, and concluded that "status" was intended to refer to the marital status of a beneficiary and not to his age. Accordingly, he ordered that the son be considered a nonquota alien entitled to a nonquota immigrant visa. The decision was certified to the Board of Immigration Appeals for review as authorized by the immigration regulations. In the hearing before the Board, the Department of State, as an

---

[2] The Immigration Service's Assistant Commissioner, Examinations, the officer charged with the initial review of the petition, limited his determination to the son's eligibility under section 6 since eligibility under section 4 could not be determined without verification of the son's priority date on the consular waiting list. The Department of State thereafter confirmed that the son had a priority date of November 18, 1953, which he derived from his father pursuant to regulation. 22 CFR 42.21(a) (since renumbered 22 CFR 42.65 (a)). Consequently, the Board was satisfied that the son is eligible under both sections, and I accept this factual determination.

interested agency, took the position that "status" referred to both age and marital status. The Department reasoned that when the third preference petition was approved, the son's status was that of a "child," that is, unmarried and under 21 years of age, and that when he reached his majority he no longer had the status of a "child" as established in the approved petition. The Board of Immigration Appeals took still a third position, that "status" refers neither to age nor to marital status but to "the consanguinity which gave the alien-beneficiary second, third or fourth preference status as the result of the approval of his visa petition prior to January 1, 1959."[3] Accordingly, the Board directed that the visa petition be approved for nonquota status.

The purpose of sections 4 and 6 of the 1959 Act was to reunite families and to relieve a backlog resulting from oversubscribed quotas which cause unusually long delays in the issuance of immigration quota visas for aliens already accorded preference status. 105 Cong. Rec. 12716, 18996. This purpose is achieved by granting nonquota status to certain beneficiaries in whose behalf petitions for preference quota status had been filed and approved before a certain cut-off date, January 1, 1959. A qualification established by these sections is the proviso that "upon his application for an immigrant visa, and for his admission into the United States, the alien [*i.e.*, the beneficiary] is found to have retained his relationship to the petitioner, and status, as established in the approved petition." What status is referred to? Presumably the status is that defined in the preceding parts of sections 4 and 6, that is to say, preference quota status under subsections (a)(2), (3) and (4) of section 203 in the case of aliens relying on section 4 and preference quota status under subsections (a)(2) and (3) of section 203 in the case of an alien relying on section 6.[4] This interpretation seems to me the most

[3] In a memorandum dated May 5, 1961, supplementing its opinion, the Board explained that "'consanguinity' was used in the broad sense of relationship which gave rise to the beneficiary's preference status, whether such relationship arose by consanguinity, adoption or marriage."

[4] Prior to the 1959 Act, subsection (a)(2) granted a preference to parents of adult citizens of the United States, subsection (a)(3) granted a preference to the spouses and children of aliens lawfully admitted for permanent residence, and subsection (a)(4) granted a preference to brothers, sisters, and adult sons and daughters of a United States citizen. (Children of United States citizens are entitled to nonquota status, section 101(a)(27) of the Immigration and Nationality Act. 8 U.S.C. 1101(a)(27).) The preferences are established by these subsections, in descending order of priority (section 203(d), 8 U.S.C. 1153(d)), and are customarily referred to as second, third and fourth preferences, respectively. In addition to expanding the third preference category to include unmarried sons and daughters of aliens, who have reached the age of 21 years, the 1959 Act moved unmarried sons and daughters of citizens of the United States from the fourth preference to the more desirable second preference.

natural one, even in the absence of the phrase "as established in the approved petition"; the presence of this phrase fortifies my conclusion, for the very purpose of filing such petitions is to obtain approval of preference quota status. See section 205 of the Immigration and Nationality Act, 8 U.S.C. 1155.

My analysis compels me to disagree with the interpretation placed on the word "status" by the Board of Immigration Appeals. The Board concluded that, as used in the proviso to sections 4 and 6, "status" refers solely to degree of the alien's relationship—by blood, adoption or marriage—to the petitioner and not to either his age or marital status. In the first place, the Board's interpretation would make "status" redundant since retention of the preexisting relationship to the petitioner is one of the two specific requirements of the proviso.[5] Secondly, to hold that "status" has no reference to marital status would not square with the intent of Congress, as manifested in section 2 of the 1959 Act, amending section 203(a)(3), that married sons or daughters of aliens should not be accorded preferential treatment under the Immigration and Nationality Act. The Board's interpretation would lead, therefore, to an anomalous result in the case of a child of an alien lawfully admitted for permanent residence, who marries subsequent to the approval of a petition on his behalf for a third preference. If the petition was approved before January 1, 1959, the child would be entitled to a nonquota immigrant visa under section 4 or 6 notwithstanding the subsequent marriage. However, if the petition was approved subsequent to January 1, 1959, it is indisputable that the child would not even be entitled to third preference status under section 203(a)(3), as amended. I cannot believe that Congress intended such disparate results, and I must conclude, therefore, that where the marriage of the beneficiary subsequent to the approval of the preference petition would adversely affect the beneficiary's present eligibility for a preference, the marriage is a change in "status" within the meaning of the proviso.[6]

---

[5] Conversely, it might appear that to interpret "status" to include all the qualifications for preference status spelled out in the relevant subsections of section 203 would make "relationship to the petitioner" redundant. However, a beneficiary may have more than one relative in the United States within the defined degree of relationship. Therefore, his status as a person eligible for a preference may not be changed although his relationship to the petitioner may cease.

[6] The above situation could occur only in the case of the child of an alien. Since adult sons and daughters of United States citizens were entitled to fourth preference until September 22, 1959, and are now entitled to either second or fourth preference depending on their marital status, a son or daughter of a United States citizen otherwise eligible for a nonquota visa under section 4 of the 1959 Act, who married subsequent to the approval of the petition, would now have the same fourth preference status he had at the time his petition was approved.

As with marital status so with age. It is clear that but for section 2 of the 1959 Act amending section 203(a)(3) to remove the requirement that the beneficiary be a minor, the son's achieving his majority would automatically bring about a change in his status within the meaning of sections 4 and 6. It is the contention of the Department of State that when this preference petition was approved in 1958, the son's "status" was "that of a 'child', that is, unmarried and under 21 years of age," and hence that such "status" was irretrievably lost upon his reaching the age of 21. In my view, the Department errs in equating status with the facts that go to determining status. The law does not give it that meaning. Status is the standing or legal position of an individual. *Kandelin v. Social Security Board*, 136 F.2d 327, 328 (C.A. 2, 1943); *Gibbons v. Sioux City*, 242 Ia. 160, 164; 45 N.W.2d 842, 844 (1951); *In re Adoption of Doe*, 231 N.C. 1, 7; 56 S.E.2d 8, 12 (1944). Of course, facts are significant, but status cannot be determined solely by reference to facts. Some facts are relevant to status and other are not. For example, in 1958 when the petition for a preference was approved, the son was male, unmarried, and 19½ years of age. Under section 203(a)(3), as it then read, the facts that he was unmarried and was 19½ years old were relevant to his status as eligible for third preference; his gender was not. Under section 203(a)(3) as amended by the 1959 Act, the fact that he is unmarried is still relevant to his status, but his age has no more effect on his status than his sex. This is because age has been by law removed as a relevant fact. It seems to me incontrovertible, therefore, that if the son had reached the age of 21 years after September 22, 1959, the effective date of the 1959 Act, his status, that is, his legal position, would have been unchanged. Since he reached that age prior to September 22, there is no doubt that his status was changed temporarily, but section 2 of the Act of September 22, 1959 restored his previous status.[7]

It has apparently been conceded in the argument before the Board that this restoration of third preference status operated retroactively to revalidate the petition *ab initio*, and the Department of State has not attempted to distinguish between beneficiaries reaching the age

---

[7] I have considered the Department's arguments based on the statutory history of the Act of September 22, 1959, but I find them inconclusive. The significance which the Department attaches to the fact that the benefits of section 4 are limited to "the spouse and the *children*" of the alien-beneficiary is unwarranted. It is not to be expected that the class of eligible dependents of beneficiaries would be as broadly defined as the class of beneficiaries. The fourth paragraph of the memorandum by Congressman Rodino, 105 Cong. Rec. 18997, does indeed tend to support the Department's interpretation, but the memorandum is entitled "a brief explanation" of the Act and it cannot be assumed that it was intended to exhaust the possibilities of relief thereunder.

of 21 years before September 22, 1959, and those who reach that age after that date. I do not find it necessary to consider this problem for as I view the provisos of sections 4 and 6 they do not require that eligibility for a preference be continuous and uninterrupted for the whole period between the approval of the petition and application for a visa. It is enough that, as in this case, eligibility existed at the time the petition was approved and exists at the time of application for an immigrant visa and for admission into the United States.

The decision ordering that the visa petition be approved for non-quota status under sections 4 and 6 of the Act of September 22, 1959 is affirmed.